No. 87.—Samuel N. Papot, plaintiff in error, *vs.* James Gibson, defendant.

[1.] Probate of a deed by a subscribing witness, before the Clerk of the Superior Court, does not authorize it to go to record ; and the copy of a deed so recorded, cannot be given in evidence.

[2.] Where, by marriage contract, a slave is conveyed to a trustee, for the use of the wife for life, and to the offspring of the nuptials in remainder; and subsequently to the death of the wife, and during the infancy of the child, who was the fruit of the marriage, the slave was sold by the father to a *bona fide* purchaser, without notice : *Held*, that the issue of the marriage, upon coming of age, can recover the property from the remote grantee of the first purchaser, the vendor having no authority to sell, being neither trustee to the wife, nor guardian to the child.

[3.] The power of a trustee over the legal estate or property vested in him, properly speaking, exists only for the benefit of the *cestui que trust*. It is true, nevertheless, that, as the legal owner, he may do many acts to the prejudice of the *cestui que trust*. He may even dispose of the estate or property to a *bona fide* purchaser, for a valuable consideration, without notice of the trust, so as to bar the interests of the *cestui que trust* therein.

[4.] Where a *bona fide* purchaser, for a valuable consideration, without notice, is concerned, *Equity* will not interfere to grant relief in favor of a party having the legal title. For where the equities are equal, a Court of Equity will not interfere between the parties ; and such a purchaser has as high a claim to assistance and protection, as any *other person* can have.

[5.] But in a Court of *Law*, the better legal title must of course prevail.

Trover, in Wilkinson Superior Court. Tried before Judge Merriwether, October Term, 1849.

Elizabeth E. Buckley and R. D. Papot, in 1824, in contemplation of a marriage between them, entered into a contract, by which

the negroes and other property of Elizabeth Buckley were conveyed to a trustee, for the separate use of the wife during her life, and at her death, to the issue of the marriage.   This deed was attested by two witnesses, by one of whom it was proven before the *Clerk of the Superior Court* of Chatham County, and admitted to record.

The husband, R. D. Papot, sold one of these negroes, July, who, after passing through several hands,. was purchased by the defendant, James Gibson, for value, and without notice of the deed. Samuel N. Papot, the only issue of the marriage, on his arrival of age, his mother being dead, brought an action of trover for the negro July.

On the trial, the original marriage contract being lost, a certified copy was offered in evidence.   The Court rejected the evidence, on the ground that the probate was insufficient; and this is the first point brought up for review.

The Court charged the Jury, that "Robert D. Papot had no right, as natural guardian, to sell or dispose of said property; that defendant acquired no title to said property by said sale, and that the Statute of Limitations did not protect defendant; that if they believed the defendant was a purchaser for a valuable consideration, without actual notice of the marriage deed, the plaintiff could not recover."   This charge is alleged, also, as error.

M. MARSH and HARDEN, for plaintiff in error.

R. HARDEMAN, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Elizabeth Eliza Buckley, being about to intermarry with one Robert D. Papot, executed a marriage settlement, whereby she reserved to herself a life estate in the slaves, then in her possession, with remainder in fee to the offspring of the intended nuptials. The plaintiff below, and in error, is the only issue of this marriage. The mother and Roger Olmstead, the trustee, having both died, the father sold one of these slaves, July, privately to one Zachariah M. Winkler, under whom the defendant claims, and appropriated the proceeds to his own use.   Samuel N. Papot was a minor at the date of this transaction, and upon arriving at age, in-

stituted trover for the property; and the questions made in the record grew out of the trial of this case.

The marriage settlement was attested by two witnesses, and proven and admitted to record, upon the oath of one of them, before the Clerk of the Superior Court. Was this authentication sufficient to admit this paper to record, so as to entitle a copy to be read in evidence, the original instrument being lost? and was the registration constructive notice to purchasers? The Court below charged the Jury, and we think, very properly, that "the deed of marriage settlement having been recorded upon probate before the Clerk, was illegally proven and improperly placed upon the record, and was no notice of the existence of the marriage contract."

All of the early Acts, regulating the registration of deeds, require them to be proved before a Judge of the Superior, Justice of the Inferior Court, or Justice of the Peace. They seem to treat it as a *quasi* judicial proceeding. No such authority has, by any Statute, been conferred upon Clerks; and the maxim *expressum facit cessare tacitum*, would in such case apply. It is contended that under the Judiciary Act of 1799, Clerks are empowered to administer oaths in all business appertaining to their office. And so they are, and, as we believe, in vacation, as well as in term time; as for instance, in receiving interrogatories, compelling securities tendered, on entering an appeal, to justify, and insolvents to swear to their pecuniary inability to give security on the appeal. In these, and such like matters, appertaining appropriately to the office of Clerk, he is clothed with authority to administer oaths; but it is no part of the Clerk's duty to authenticate conveyances, so as to fit them for registration, but only to record them when brought to him, properly proven, for this purpose. As the Clerk's office is very generally used for executing deeds and bills of sale, it would be found very convenient to delegate to this officer the power here claimed, and to make his official attestation, like that of a magistrate's, sufficient to admit a deed to record. It is competent, however, for the Legislature only to do this.

But had the law been otherwise, the decision must have been the same, namely: that the registration of the marriage settlement was not such notice as would affect any body. The law now requires marriage settlements to be recorded within three months

Papot *vs.* Gibson.

from the execution thereof, in the Clerk's office of the Superior Court of the County of the husband's residence; and declares that if this be not done, the instrument shall not be of any force or effect against *bona fide* purchasers, creditors or sureties, without notice. Such, however, was not the law in 1824, when this contract was entered into. I will not say but that, like a bill of sale, or deed of gift to personal property, *it might* have been recorded, had it been properly authenticated before the recent Statute of 1847. But being *permissive* only, and not *imperative*, as it is now, actual notice would have been necessary. For this doctrine, as to the registration of deeds being *constructive notice* to all subsequent purchasers, is not to be understood of all deeds and conveyances, which may be, *de facto*, registered, but of such only as are authorized and required by law to be registered, and are duly registered in compliance with law. If they are not authorized or required to be registered, or the registry itself is not in compliance with the law, the act of registration is treated as a mere nullity; and then the subsequent purchaser is affected only by such actual notice as would amount to a fraud. 1 *Story's Eq. Jur.* §404.

[2.] But secondly, it is complained that the Court erroneously instructed the Jury, that "should they believe that the defendant was a purchaser, for a valuable consideration, and without actual notice of the marriage deed, the plaintiff was not entitled to recover; and that the plaintiff was not entitled to recover in this case, if defendant had purchased for a valuable consideration."

Now we are unable to reconcile this charge with the previous opinion of the Court in the same case, to wit: "that Robert D. Papot had no right, as natural guardian, to sell or dispose of the property embraced in the marriage settlement; that the defendant acquired no title to said property by said sale, and that the Statute of Limitations did not protect him." If the vendor had no right to sell, and the vendee acquired no title by the purchase, and time had not run in his favor, how does the fact that Winkler paid a *valuable consideration* for the negro, bar the recovery of the true owner? It surely will not be gravely insisted, that if A find and sell to B the runaway slave of C, for a *full price*, and without notice, that C cannot sue for and recover his property; and yet, the argument of counsel, if it amounts to anything, goes to this extent; for he puts it upon the *bona fides* of the *purchase*, regardless of

the plaintiff's title, and contends that it is immaterial whether Samuel N. Papot claims under a *voluntary* conveyance, or under the marriage settlement, which is admitted to be founded upon a valuable consideration.    But this doctrine, we apprehend, cannot be maintained, unless we are prepared to go further, and hold that the *possession* of personal property is *conclusive* evidence of title.    And while there may be plausible reasons assigned, even for *this* proposition, it is incompetent for the Courts to establish such a principle.

[3.] Had the sale of this negro been made by Roger Olmstead, the trustee, during the lifetime of Mrs. Papot, the wife, instead of by the husband after her death, the purchaser would have acquired a good title.    For I take the law to be clear, that while the power of the trustee over the legal estate or property vested in him, properly speaking, exists only for the benefit of the *cestui que trust,* yet, as the legal owner, he may do many acts to the prejudice of the *cestui que trust;* and among the rest, he may even dispose of the property, so as to bar the interests of the *cestui que trust* therein, as by a sale to a *bona fide* purchaser, for a valuable consideration, without notice of the trust.    But where the alienation is purely voluntary, or where the estate devolves upon heirs, devisees or other representatives of the trustee, or where the alienee has notice of the trust, the trust attaches to the estate in the same manner as it did in the hands of the trustee himself, and it will be enforced accordingly in Equity.    1 *Madd. Ch. Pr.* 363, 366.    2 *Fonbl. Eq. b.* 2, *ch.* 7, §1, *note a.    Pye vs. Gorge,* 1 *P. Wm.* 129.    *Saunders vs. Dehew,* 2 *Vern.* 271.

[4.] There is another familiar rule in *Equity,* in view of which I would respectfully suggest the error in this case has been committed, namely: that against a *bona fide* purchaser, for a valuable consideration, without notice, a *Court of Equity* will not interfere to grant relief.    For, in the view of *such* a *Court,* such a purchaser has as high a claim to assistance and protection as any other person can have; and where the equities are equal, the Court withholds itself from any interference between the parties.    1 *Story's Eq. Jur.* §139.    *Mitford's Eq. Pl. by Jeremy,* 274, x.    *Cooper's Eq. Pl.* 281 *to* 285.    2 *Fonbl. Eq. b.* 2, *ch.* 6, §2, *and notes.    Malden vs. Merrill,* 2 *Atkin.* 8.    *Newland on Contr. ch.* 19, *p.* 342.

[5.] But the plaintiff in trover here is not invoking the aid of a Court of Equity to assist him in the obtainment of his rights.    He

is seeking merely to assert his legal title in a Court of Law, where, of course, it must prevail; and this is the true distinction.

Judgment reversed, and a new trial awarded.