### SANDS v. MINER.

(Supreme Court, Appellate Division, First Department.    April 15, 1897.)

PARTNERSHIP—INTEREST OF DECEASED PARTNER—ACQUISITION.

A partner who elects to take the interest of a deceased partner under the terms of their articles of co-partnership, which provide that, if either should die, "the other party shall be at liberty to immediately fix the value of the interest of such party according as the same may appear from the books of said business, and on payment of such sum in cash to acquire such interest," cannot acquire decedent's interest in any other way than the one specified, though its actual value is less than the book value.

Appeal from judgment on report of referee.

Action by Virginia Sands, as administratrix of the estate of James G. Sands, deceased, against Henry C. Miner, for an accounting.    There was a judgment in favor of plaintiff, and defendant appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

Benjamin Steinhardt, for appellant.
Frank Barker, for respondent.

O'BRIEN, J.    The action was brought for an accounting on the dissolution of a co-partnership formed between the defendant and one James G. Sands by an agreement in writing, by which the defendant contributed cash equal in amount to the value of the business known as "Church's Dispensary," which included the lease of the premises in the Bowery, and the stock and fixtures therein contained, contributed by Sands.    The contract, in one of its clauses, provided:

"It is further agreed that at the termination of the said co-partnership the said property and the accumulations thereof shall be divided equally between the parties hereto, except, however, that should either party desire to terminate this agreement before the time herein fixed, or if either of the parties hereto shall die, or violate the terms hereof, the other party shall be at liberty to immediately fix the value of the interest of such party according as the same may appear from the books of the said business, and, upon payment of such sum in cash, to acquire such interest; it being distinctly understood that in determining said amount the good will of said business, or lease of said premises, shall not be considered of any value whatever, although the same shall be transferred when such interest is paid for."

The partnership was terminated by the death of Sands, and the defendant thereafter continued the business on his individual account.

But two rulings of the referee are contested:    First, as to whether he correctly determined that Sands was entitled to receive for the fixtures their book value; and, second, whether he was correct in allowing the face value of certain book accounts.    That the disposition made by the referee was right, we think a brief reference to the terms of the contract, and the conduct and attitude of the parties, will show. As shown by the pleadings and the referee's report, the plaintiff sought to have the defendant account as a surviving partner who had continued the business in violation of the trust cast upon him to liquidate and wind it up.    The defendant took the position that, under the terms of the contract, he had a right to, and did, fix the value of Sands' interest, at a sum which the plaintiff had refused to accept.    The referee adopted the view that the defendant was entitled to take the business under a valuation made pursuant to the clause of the contract, and that the issues to be tried were as to the correctness, according to the books, of the defendant's valuations; and it is upon exceptions filed to the account presented by the defendant that the questions on this appeal arise.

Upon the death of Sands the defendant had the right to elect either to wind up the business (in which case he would only be obliged to account for the actual value of the property, and to pay over to the administratrix the one-half portion thereof), or to do what he claims to have done, and what the referee held, with him, he had a right to do, namely, to take the business, and place a value upon it in accordance with the terms of the partnership contract.    When he so elected, he took a running business; and, in fixing the price which he should pay for Sands' interest, he was authorized to omit the value of the lease or good will, which he thus acquired without paying anything therefor.    But, as an offset to that, the express provision of the contract was that he was to fix the value of the interest of his deceased partner "according as the same may appear from the books of the said business."    There is no claim that there was any fraud or imposition upon the defendant, so far as concerns the books, as kept, but they were admittedly a correct statement of the business.    What the defendant complains of is that the valuations were too high, and that the furniture and the bills collectible were not worth the amount appearing upon the books.    Under his election, however, the defendant was not at liberty to acquire the interest of Sands in the business upon payment of the actual value fixed by himself upon the property which he took over, excluding therefrom the value of the lease and

.good will.   The referee was correct, therefore, in holding that, in the absence of fraud or imposition of any kind, the defendant, on taking over the business, was obliged, according to his contract, to pay, not the actual value, but the book value, for the interest of his deceased partner.

We think, therefore, that the judgment should be affirmed, with costs.   All concur.