LOUIS LOWENSTEIN and Others, as Executors, etc., of ISAIAS MEYER, Respondents, *v.* HERMAN SCHIFFER and ALFRED SCHIFFER, Appellants.

*Partnership — construction of a clause authorizing surviving partners to purchase the assets.*

In an action brought by the executors of a deceased partner to recover the decedent's interest in the partnership assets, an accounting was asked for to determine the amount due when the partnership was terminated, and the profits subsequently realized by the defendants from moneys unpaid since that time.

The answer set up the following partnership agreement: "If any of the parties hereto shall die before the end of the term of copartnership hereby created, or of any renewal term thereof, and the representatives of such deceased partner should, at the end of such term, elect not to further continue the copartnership business with the surviving partners, then in that event the surviving partners shall have the right which is hereby granted them to purchase all the right, title and interest of the deceased partner in the partnership assets and good will of such business *at a valuation shown by the books of account of the partnership,* making a deduction of twenty-five per cent upon the valuation of the machinery as shown upon said books of account," and that the defendants had elected to purchase pursuant thereto.

*Held,* that the words "at a valuation shown by the books of account of the partnership" indicated that an estimated value, as between the partners, shown upon the books, and not the market value of the assets, was to govern in determining the price to be paid by the partners electing to purchase thereunder; and that the only reasonable construction of the agreement was that the

books, as finally written in the ordinary course of business, with all entries in them, following the method pursued during the lifetime of the decedent and down to the termination of the partnership (the inventory being made up in the same manner) should determine the question;

That if the executors of the decedent were not bound by this method of determining the amount to be paid under the agreement, the surviving partners would not be bound to purchase, and the affairs of the partnership should be liquidated in the usual course.

Appeal by the defendants, Herman Schiffer and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 9th day of May, 1898, upon the report of a referee, and also from an order made at the New York Special Term and entered in said clerk's office on the 11th day of April, 1898, granting the plaintiffs an extra allowance of $2,000.

The action was brought by the executors of the will of Isaias Meyer to ascertain the amount due from the surviving partners, Schiffers, to the beneficiaries of Isaias Meyer in payment of their interest in the Pelgram & Meyer partnership and the mode of its payment. The complaint sets up the articles of a partnership formed for the manufacture of silk goods, entered into between Isaias Meyer and the defendants on May 1, 1888, admits certain payments made amounting to $143,750, and asks for an accounting as to the sum due the beneficiaries on May 31, 1893, when the partnership was terminated, and as to the amount due for profits realized by the defendants from moneys unpaid since that time.

The answer admits partnership, the payments made, and alleges that by the partnership agreement $609,000 is the valuation of the interests of the beneficiaries as shown by the books of the partnership, which sum the defendants have been ready and willing to pay. The answer further alleges that there was a subsequent agreement, by the terms of which the defendants were to pay in settlement of all claims of the estate of Meyer in the partnership the sum of $585,000. As we hold by our decision in *Schiffer* v. *Lauterbach* (*post*, p. 636) that such an agreement for a settlement was not established, we are relieved from further considering it and are remitted for an adjustment of the rights of the parties to the original partnership agreement.

With reference thereto it appears that Isaias Meyer died August

24, 1888, and the business was continued by the surviving partners Schiffers for the benefit of the partnership till June 1, 1893; that on November 29, 1892, the Schiffers were notified by the executors that, in pursuance of the partnership agreement, the beneficiaries had decided to terminate the partnership on May 31, 1893, when the amounts due should be paid over; and that on May 29, 1893, the Schiffers, by notice to the executors, elected to purchase the interests of Isaias Meyer as permitted by the articles of copartnership. The stipulations of the partnership agreement thus referred to are contained in subdivisions 14 and 15 as follows:

"*Fourteenth.* If any of the parties to this agreement shall require the copartnership hereby created to terminate at the end of the term hereby fixed, the party or parties desiring such termination shall, not less than six months next preceding the expiration of the term of the copartnership hereby created, serve upon all the other parties hereto a notice in writing to that effect, subscribed by the party desiring the termination of such copartnership. If no such notice shall be given by any of the parties hereto within the time above prescribed, the said copartnership shall be conclusively deemed to be extended for a further term of five years from the date of its termination under all the terms and conditions herein contained."

"*Fifteenth.* If any of the parties hereto shall die before the end of the term of copartnership hereby created or of any renewal term thereof, and the representatives of such deceased partner should, at the end of such term, elect not to further continue the copartnership business with the surviving partners, then in that event the surviving partners shall have the right, which is hereby granted them, to purchase all the right, title and interest of the deceased partner in the property, assets and good will of said business at a valuation shown by the books of account of the copartnership, making a deduction of twenty-five per cent upon the valuation of the machinery as shown upon said books of account, and if said surviving partners shall elect to so purchase the interest of the deceased partner, it is agreed that they shall pay therefor in yearly installments of $50,000, with interest upon the balance of the purchase price thereof at the rate of $4\frac{1}{2}$ per cent per annum until the entire sum shall have been paid, and the same shall be secured by mortgage upon the real estate and machinery belonging to said partnership."

The executors were notified by letter of June 2, 1893, that an inventory of the assets of the partnership would be taken by the surviving partners, and were invited to have representatives attend such stock taking, "to the end that the representatives of the estate might be assured as to the extent and quantities of the assets," but were informed that "such participation should in no way change, alter or affect the legal rights or standing of any of the parties interested in such assets." The inventory was at once begun, and continued during the early part of June, and a balance sheet was made as of May 31, 1893, and sent to the executors. In accordance with the methods of valuation used, the interests of Isaias Meyer were found by the Schiffers to be $609,976.18. The estimate of the worth of the partnership was made by adding to the other assets an amount for raw material on hand, for goods manufactured and in process of manufacture, and for machinery. Differences arose with regard to these items.

The value of the raw silk was obtained by taking the actual cost, and the value of the manufactured, and partly manufactured, product was obtained by taking the average cost of the raw silk during the preceding year and adding thereto the actual cost of manufacture. It is alleged that this method of reaching the valuation was the one in vogue throughout the partnership in its yearly inventories, and it appears that at the inception of the firm the raw material was contributed at its cost price. The surviving partners, therefore, claim that the valuation obtained was such as "shown by the books of account of said copartnership," and that the method used was the one contemplated.

The referee did not accept the valuation so obtained, but admitted evidence, over the defendants' objection, as to the market value of silk on May 31, 1893, taking, however, for a basis of amount of stock the figures used by the Schiffers in their estimate. A chart was admitted in evidence which shows that in 1893, until about June first, the silk market was a rising one, and that thereafter there was a steady and marked decline till the latter part of 1894. The referee's estimate rests principally on the testimony of Oscar Meyer, son of the deceased partner, but not a beneficiary under the will, who is also engaged in the silk business, and who submitted tables of values. These tables were calculated when the inventory was

made, and show a wide variance therefrom, the conclusion reached being that the Schiffers' estimate should be greatly increased.

It further appeared by the testimony of an expert, McKenna, that even after the decline in silk, the amounts realized by the Schiffers on goods sold was an increase over the inventory valuation. The referee allowed a margin for discounts, expenses and profits, and concluded that, "having taken over the goods as purchasers and disposed of them for their own account and benefit, the Schiffers are liable for the fair value at the date of purchase. Fair value does not mean cost. * * * The goods in process of manufacture at the inventory prices — that is, the average cost of materials plus actual cost of labor and processes, amounted to $187,278.97; Mr. Oscar Meyer's testimony is that they in fact amounted to $234,378.31. This result he reaches by taking the materials at their value on May 31, 1893, and adding thereto the costs of processes and of labor."

In estimating the value of the machinery, the surviving partners added to the agreed original valuation of $315,000 the amount expended for new machinery and repairs, and deducted what was called the "suspense account," and also twenty-five per cent for depreciation, as permitted by subdivision 15. This machinery valuation was altered by the referee by refusing to allow deduction of "suspense account." The Schiffers allege that the suspense account was started by Isaias Meyer by an item of $85,535.46, being the difference between the nominal value of machinery contributed, namely, $400,535.46, and the agreed valuation of $315,000. The account, as it appears on the books, is stated as follows: November 30, 1888, $21,000; June 29, 1889, $25,000; June 30, 1890, $37,500; June 30, 1892, $10,000; July 31, 1893, $38,000.

The last item, it will be seen, is of date later than the termination of the partnership. These items are said to have been entered as yearly deductions for "depreciation of machinery." In the account itself no such words appear, but instead "contingent liability on stock, accounts and machinery" and "suspense for future contingencies." The term "suspense depreciation machinery" first appeared in the balance sheet May 31, 1893, and then over an erasure. There was some testimony that the suspense account was for the purpose of fixing values of machinery for insurance. It was contended that in no other way could depreciation commensu-

rate with the increasing years be calculated than by such a deduction. The referee held that there was no satisfactory explanation of the suspense account, and that, particularly in view of the irregularity of the items, it should not be admitted; and, regardless of the time involved, he allowed twenty-five per cent for depreciation, as stated in subdivision 15.

A further controversy arose with respect to the fact that the surviving partners failed to make payments on request to the beneficiaries, although Mr. Meyer had the privilege to reduce his surplus by withdrawing a portion of the accrued profits, and it had been agreed that $15,000 might be so drawn yearly. The executors attempted to charge the Schiffers with amounts not paid, but the referee held that, although they might at law have compelled the surviving partners so to pay over such moneys, no charge could be made on a final settlement, inasmuch as the interests in the assets would only have been increased by so much of the yearly sums not withdrawn. And in answer to the executors' claim that the Schiffers should not be allowed to better themselves by retaining these moneys, the referee shows that, although it appeared that some demands for money had been made, it was not clear for what sums, or on what account, or whether afterwards satisfied.

On the whole case the referee concluded that the interests of the beneficiaries on May 31, 1893, amounted to $729,193.07, payable in yearly installments of $50,000 with four and a half per cent interest on the balance unpaid from year to year; that the first installment was payable May 31, 1894, and that the payments made had not been sufficient to meet the yearly installments and interest; that on May 31, 1897, there was due on account of such installments and interest $103,827.75, and that for this sum, with interest at six per cent from that date, the plaintiffs were entitled to judgment; that there was also unpaid the balance of the purchase price, amounting to $555,256.75, payable in installments of $50,000 at four and one-half per cent interest on the whole thereof unpaid, the first payment to be made on May 31, 1898, and a like payment each year thereafter till all was paid, for which the plaintiffs were also entitled to judgment, the payments to be secured by mortgages as stated in subdivision 15.

Judgment was entered in accordance with this determination, and

a motion was thereafter made for extra allowance of $2,000, which was granted. From both judgment and order the defendants appeal.

*Samuel Untermyer,* for the appellants.

*John E. Parsons,* for the respondents.

O'BRIEN, J. :

The theory upon which the learned referee proceeded was, that the defendant Schiffers had elected to purchase as of the 31st of May, 1893, and were bound by such election ; and, upon the theory of a purchase, he proceeded to fix the interest of the estate of Isaias Meyer. This was the theory upon which the plaintiffs elected to try the cause, notwithstanding there were allegations in the complaint of a failure on the part of the Schiffers to comply with the provisions of the articles of copartnership permitting them to acquire the Meyer interest, whereby they lost their right to purchase such interest and the plaintiffs became entitled to a liquidation of the partnership and " to receive from the assets and effects thereof such amount as upon such liquidation shall be ascertained to be due to them."

The position taken by the Schiffers in their answer was, that they had not lost the right, and had elected to purchase, pursuant to the written articles of copartnership, giving them the right to purchase all the right, title and interest of the deceased partner at a valuation shown by the books of the partnership after making the deduction of twenty-five per cent from the value of the machinery as shown by the books of account. Upon the trial, however, they insisted that, if the principle according to which they had made their estimate from the books of account and from the inventory made subsequent to the termination of the partnership, was not assented to, then there should be a liquidation. Or, to state their position in the language of their counsel, " we do not object to a liquidation, * * * on the contrary we shall insist upon a liquidation unless we get the property at the price which we were supposing that we bought it."

Although there is some vagueness in the attitudes assumed by the parties as shown by the pleadings, this disappeared upon the trial when the executors elected to proceed upon the theory of a

purchase. And the defendants took the same attitude, coupled, it is true, with the condition that the purchase was to be in accordance. with the estimate made by them. The referee, therefore, rightly. proceeded upon the theory of a purchase to fix the price which,· under the articles of copartnership, the defendants should pay for the interest held by the estate of Isaias Meyer. Such interest was to be purchased at a valuation shown by the books of account, and it is upon the construction to be given to this clause in the articles of agreement in which this language is found that the whole controversy turns.

The property and assets of the copartnership consisted of real estate, machinery and merchandise. With regard to the real estate, factories and machinery, the books had entries from which a valuation could be made as provided in the articles of copartnership. About the machinery a serious controversy arose as to whether the items or sums as shown in "suspense account" were or were not amounts which should be deducted as representing depreciation in machinery. With the referee's reasoning and conclusions in refusing to allow a deduction of the suspense account we agree, but we cannot concur with his valuation of the merchandise. Such merchandise consisted of raw silk, goods in process of manufacture and of the completed product; and for these items the referee held that the defendants should pay the market value as of the 31st of May, 1893. At that time the price of raw material was very high; and as the raw material affected the price of the goods in process of manufacture as well as of the finished goods, the amount which the referee found the defendants should pay is nearly $200,000 more than the estimate made by the defendants upon their view that they were entitled to purchase at cost, or with respect to merchandise other than the raw silk (the cost of which could be exactly ascertained) as approximately thereto as possible.

It is evident then that the question is whether or not the price to be paid by the Schiffers is to be predicated upon the value of the merchandise as of the date when they elected to purchase, or at the cost price. Differently expressed, the question resolves itself into a determination as to which was the proper method of procedure for the purpose of determining the valuation according to

the books. Upon the entrance of the Schiffers into the partnership, the merchandise was taken at cost, and thereafter the inventories as made and as presented to the executors were based on the same method. At the date of the purchase, although the books did not then show just what the cost was, the inventory subsequently made (which followed the methods used throughout the partnership) determined the valuation by taking the average cost during the previous year. It is true that neither this method of the past bookkeeping of the firm, nor the inventory made after its dissolution, was conclusive upon the executors, because, although having the right to be present, they did not directly participate in fixing the values. But the circumstances are significant as showing the theory upon which the Schiffers were proceeding, and that they had in mind the failure of the executors to object at any time to this manner of fixing value. And there is much force in the position which the Schiffers took at the very outset and consistently maintained during the entire trial, that if their theory of valuation were not to be applied, then there should be a liquidation of the copartnership, because the minds of the parties never met.

The learned referee, however, rejected the valuation reached, which was predicated upon the method followed in keeping the books of the partnership from its inception, with the knowledge of Meyer in his lifetime and of his executors after his death, and in lieu thereof accepted and acted upon the evidence outside the books for the purpose of fixing the value as of the 31st of May, 1893. The evidence shows that the price of raw silk advanced very considerably from the fall of 1892 to the spring of 1893; and while the respondents argue that it would be unjust to make no allowance for this increase in determining the value of the property on May thirty-first, the Schiffers contend that it would be equally unjust to estimate the stock at a large advance on what it cost, and thus compel them to take it at a price greater than they could obtain in case of depreciation before they could make up and sell the goods. In this connection the appellants call attention to the fact that a great decline in prices did take place, beginning in June and continuing during the remainder of the year.

These considerations, however, do not aid us much in reaching a conclusion as to the real meaning of the word " valuation " in the

contract. That the Schiffers did not understand it to mean market value, we think, appears from what we have already said about the manner of keeping the books. Furthermore, if market value was intended the books would not be likely to show it, for, until a sale, such value could not be ascertained, and, when sold, the goods would cease to be the subject of valuation. In other words, as soon as market value is taken as the standard, it is at once necessary to depart from the books. The word " value " is not used, but " valuation " — an estimation to be made upon the basis of the books — which indicates that an estimated value as between the partners shown upon the books is to govern. This view seems to be borne out by the fact already referred to, that it was agreed in the articles of copartnership that the value of the goods contributed by Meyer was " to be ascertained by an inventory to be taken at its actual cost," and also by the fact that from this time on all inventories were made in this way.

The argument of the respondents, that it is inequitable to compel them to be bound by an inventory made by the Schiffers, must fall if the view is maintainable that the method pursued in making the inventory was one sanctioned and provided for in the original agreement between the parties, and in the absence of any fraud or mistake as to the quantities in the inventory made. And the same answer applies to the objection raised by the respondents, that the last inventory was made after the termination of the partnership. The books did not show on May 31, 1893, the valuation of the property, and the agreement does not confine the appellants to the books as they existed on that date. The only reasonable construction of the contract is that the books as finally written up in the ordinary course, with all entries in them, should determine the question. If there was nothing wrong in the method pursued during Meyer's lifetime and down to the termination of the partnership, there was nothing wrong in pursuing the same method in making up the inventory after the partnership had terminated.

Necessarily the discussion which we have entered upon in reference to the raw material, governs also to a large extent the valuation of the completed goods and those in process of manufacture. In both of these, also, the referee rejected the cost of the raw material entering into their composition, and held that the market value

should be considered. Difficulty would necessarily arise in tracing the exact nature and quantity of the raw material used in the goods manufactured and in process of manufacture. What it was necessary to ascertain, however, upon the basis we are now discussing, was the cost of such material plus the cost of manufacture, and the method suggested by the appellants of taking the average cost of raw material during the year previous to May 31, 1893, appears to be as accurate as any that could be devised. In the method pursued by the referee, the difficulty as to ascertaining cost price was avoided, for the reason that he determined the valuation by taking the market value of the raw material on May thirty-first, and adding, in the case of wholly and partly manufactured goods, the cost of manufacture. Evidently, any method used as to goods in process of manufacture would also be applicable to manufactured goods.

We do not go to the extent of holding that the executors are bound by the method adopted by the Schiffers in keeping their books; but if not so bound, then there should have been a liquidation. For, we do not think it was competent for the referee, any more than it would be for this court, to compel the Schiffers to pay for the property in a manner other than provided by the articles of copartnership. As correctly argued by the appellants, if they were not entitled to purchase at a valuation shown by the books, they were not entitled to purchase at all. If the method on which they based their election — a method which was used in the bookkeeping of the firm, with the knowledge of all the parties throughout the partnership — cannot be sustained, and there appears no method of valuation shown by the books, then a liquidation should follow. Differently expressed, if the election to purchase on the basis of a valuation to be ascertained in a particular way, by a method followed by the Schiffers, was not to govern and was not binding on the executors, then the minds of the parties never met. If unjust to hold the executors to the estimate so made by the Schiffers, then equally unjust would it be to allow the executors to substitute another and entirely new method of bookkeeping, and, by holding that to be binding on the Schiffers, compel them to pay on a valuation never contemplated by them, and to which, had they known of it, they would never have assented or agreed to purchase. Their position, consistently maintained, was that they elected to purchase on the

basis that the method of valuation as shown by the past method of bookkeeping, was to govern on the final accounting, but if not, then that there should be a liquidation. Such a position, we think, they were legally entitled to take; and the failure to recognize it by the referee necessitates a reversal of the judgment and order appealed from, and a new trial before another referee, with costs to appellants to abide the result.

Van Brunt, P. J., Barrett, Rumsey and Patterson, JJ., concurred.

Judgment and order reversed, new trial ordered before another referee, costs to appellants to abide event.