21525.  CATES *et al.* v. CATES, Executrix, *et al.*

ARGUED JANUARY 9, 1962—DECIDED FEBRUARY 9, 1962.

*S. B. Lippitt,* for plaintiffs in error.

*Perry, Walters & Langstaff, Eugene C. Black,* contra.

MOBLEY, Justice. 1. The plaintiffs contend that the trial judge erred in making the following finding and ruling in granting the summary judgment: "(1) That under the provisions of Item IX of the Will of Russell R. Cates, deceased, the deceased gave to his brother, James Cates, one of the Executors, an option to purchase his business known as the 'Albany Amusement Company' at its book value less 20%, which amount would represent the reasonable market value of said business; that by the use of the term 'book value,' the testator meant the value of said business as shown by the books kept by the testator in connection with the operation of said business and not the 'market value' thereof; that under the undisputed evidence the amount charged by the Executors and paid by James Cates for said business was the 'book values' within the foregoing meaning of said term as used in the testator's will 'less 20%'; and that therefore said sale was made in conformity with the provisions of the will of the testator and is not subject to attack for any reason set out in the plaintiff's petition."

The uncontradicted evidence is, as the court stated, that the amount charged and paid by James Cates for the business was the "book value" of the business as shown by the books of the company at the time of the sale, less 20%. The question is whether the court's ruling that the meaning of the term "book value," as used by the testator, meant the value of the business as shown by the books of the company, kept in connection with the operation of the business, is correct, or whether the words

"book value less 20%, which would represent the reasonable value of said business" mean market value, or whether the provision was ambiguous, thus raising an issue of fact for a jury to decide.

The terms *"book value"* and *"market value"* are not synonymous. While they may be the same, they may just as well not be. As was said in Opdyke v. Security Savings & Loan Co., 157 Ohio State 121, 148 (105 NE2d 9), "The book value of an asset ordinarily merely represents the cost of that asset. Such book value may be reduced by book entries for depreciation or obsolescence, but except as reserves may be set up to recognize decreases in value, the rise or fall in the value of an asset is not usually recognized by its book value. Thus, the book value of an asset at any given time may be more or less than its value."

While this court has never passed upon the question of what is "book value" of a business, the term itself obviously means the value of a business as shown by its books, which would be determined by comparing the assets and the liabilities, the difference being the "book value." This is the construction generally placed upon the term by courts of this country which have passed upon the question.

In Succession of Jurisich, 224 La. 325 (69 S2d 361) it was held: "The term 'book value' in contract giving surviving partner right to buy interest of deceased partner in partnership business at its then book value meant only value as shown by books of business." See also Rubel v. Rubel, 221 Miss. 848 (75 S2d 59, 47 ALR2d 1410), where the court in considering a partnership agreement which gave the surviving partner the right to purchase the deceased partner's share at 75% of book value, held that in determining book value it was proper to exclude from the book value furnishings and equipment which had been fully depreciated on the books prior to the partner's death.

The will under consideration was executed on March 13, 1956. The evidence shows that for many years prior to the testator's death, both before and after the execution of the will, his auditor, John W. Crouch, a certified public accountant, furnished him annual statements of the business expressly showing the book

value of the business. These statements showed the rate of depreciation of machines and other equipment used in the business so the testator knew that in arriving at the book value of his business the depreciated value of the equipment was used.

Thus it seems palpably clear that the term "book value" as used by him in his will meant book value as shown on his books. The books were audited by a certified public accountant whose ability and integrity have not been questioned. The correctness of the books is not in question, and there is no charge of fraud in the keeping of the books. Plaintiffs' contentions are that the book value as shown by the books is not the true value of the business, and they urge that there should have been a re-appraisal of the value. Similar contentions were rejected in Schaffer v. Below, 174 FSupp. 505, aff'd in 278 F2d 619. See also Borg v. International Silver Co., 11 F2d 147; Barsan v. Pioneer Savings & Loan Co., 163 Ohio State 424 (127 NE2d 614); Aldrich v. Geahry, 367 Pa. 252 (80 A2d 59); Lowenstein v. Schiffer, 38 App. Div. 178 (56 NYS 674); Sands v. Miner, 16 App. Div. 347 (44 NYS 894), aff'd 160 NYS 693.

The evidence of the accountant, Mr. Crouch, was that the depreciation taken on the assets of the business was a normal rate of depreciation taken in the industry. There is no evidence in the record that would justify a contrary conclusion.

Did the fact that the testator, after using the words "at book value less 20%", added thereto "which would represent the reasonable market value of said business," modify or change the meaning of the term "book value," or create an ambiguity? We think not. The testator expressly authorized the sale of the business to his brother at "book value less 20%". The added words were simply an expression of his opinion that such price would constitute the market value of the business. At the time he made his will he knew the book value of his business as shown by his books, as the auditor's report reflected such value, and from the annual statements he continued to know the book value until his death. The added words did not modify or qualify the term "book value less 20%" and consequently did not create an ambiguity.

The court properly construed this item of the will. The exec-

utors were authorized under the terms of the will, and it was their duty to convey the business to James Cates at the book value less 20% as shown by the books of the company. This they did. There is no evidence of fraud or other misconduct on their part in carrying out this provision of the will. There was no genuine issue of fact raised by the pleadings, affidavits or testimony of witnesses on this question, and accordingly the court properly granted summary judgment thereon. *Code Ann.* § 110-1203.

2. Exception is made to the following finding of the court and granting motion for summary judgment thereon: "(2) that under the undisputed evidence the Executors were justified in treating the sale of the 'Albany Amusement Company' to James Cates as having been effectuated as of the date of the death of the testator, and that therefore the estate was not entitled to any of the income of said business after the date of the death of the testator."

Item IX of the will, after granting testator's brother, James Cates, an option to purchase the Albany Amusement Company, provided that to exercise the option he must give the executors notice in writing of his intention to exercise the option within 90 days after the death of the testator, and that he should have the privilege of paying for the business in 120 equal monthly installments with no down payment required and with no interest on the unpaid balance.

The testator died on September 16, 1958, and an inventory of the business was taken on that day. On September 24, James Cates wrote a letter to the executors informing them that he would exercise the option, stating that the sale would be effective as of September 17, 1958. He operated the business as his own from September 17, 1958, with the approval of the other two executors. The formal transfer of the business by bill of sale was effected on November 17, 1958, but, with the approval of the executors, it was dated September 17, 1958. The delay in effecting formal transfer was occasioned by the necessity of securing serial numbers on the machines being transferred. The evidence shows without dispute that James Cates operated the business as his own from the death of the testator, assumed

all liabilities as of that date, and that the sale had actually been consummated as of the date of the death of the testator. The executors acted within the authority conferred upon them by the will to sell the Albany Amusement Company as of the date of the death of the testators, and there is no merit in the plaintiff's contentions that the estate was entitled to the income from this business from the testator's death to November 17, 1958, the date of the formal transfer of the business. The court did not err in granting summary judgment as to this matter.

3. Exception is taken to the following finding by the court and to the granting of summary judgment thereon: "(3) That under the provisions of the testator's will, the testator placed upon the Executors who were acting at the time of a division of the estate (his brother James Cates and his wife Nina Belle Cates), the duty of satisfying the marital bequest made in trust for the use and benefit of his wife, Nina Belle Cates; that the testator likewise gave to said Executors so acting at the time of the division of the estate the power and authority to satisfy said bequest either in money or in property or both and to determine what property, if any, should be distributed in kind in connection with the satisfaction of said bequest and a determination of the Executors on these matters would be final and conclusive on all parties interested; that there was no evidence introduced which would justify setting aside the acts of the Executors in transferring certain properties to the marital trust and the values assigned thereto by the Executors and in substituting for the judgment of the Executors a judgment of a jury or of this court with respect to said matters; and that therefore under the law and the undisputed evidence the acts of the Executors in this connection were as a matter of law valid and not subject to attack."

The executors of the will in satisfaction of the marital trust, (one half the property of the testator), created by the will, deeded all the real estate and transferred the Empire Produce Company to trustees for the wife. Plaintiffs complain that all the real estate and all the income-producing property and more than one half of the estate was transferred to the marital trust. Clearly there is no merit in the complaint that all the real es-

tate and all income producing property was placed in the marital trust, as the will expressly provided that "in the distribution of my estate and division into separate trusts and shares, the Executors and/or Trustees shall be authorized to make the division in money or in kind, or partly in money and partly in kind, and the division made by my Executors or Trustees and the values established by them for such division shall be binding and conclusive on all persons taking hereunder."

This is true unless there is evidence that this transfer was made as a part of a scheme to defraud other beneficiaries under the will, or unless there is evidence that the executors failed to exercise the discretion vested in them, but acted arbitrarily or dishonestly with the intention of depriving beneficiaries of their part under the will. ". . . A discretionary power in a trustee is [not] beyond the reach of judicial inquiry. A court will interfere whenever the exercise of discretion by the trustee is infected with fraud or bad faith, misbehavior, or misconduct, arbitrariness, abuse of authority or perversion of the trust, oppression of the beneficiary, or want of ordinary skill or judgment." 54 Am. Jur. 228, Trusts, § 287. "The courts will not ordinarily interpose to restrain the execution of a power, except where abuse of discretion, bad faith, or fraud is shown, or where the power is attempted to be exercised in a manner different from that authorized by the donor." 72 C.J.S. 430, § 34. Plaintiffs contend that the valuations placed upon the real estate and the Empire Produce Company were not true value, but much less than their value, and that these transfers resulted in not one half of the estate but two thirds to three fourths of the estate being transferred to the marital trust, and that in making this transfer the executors abused their discretion in their own favor, acted in bad faith and in excess of the power given them under the will, and perpetrated a fraud upon the beneficiaries of the residuary trust. The court found that there was no evidence to support these charges. After careful review of the evidence, we agree with that conclusion.

As to the value of the real estate transferred to the marital trust, plaintiffs offered evidence of witnesses, one of whom valued it at $148,200, another at $393,500 and Albert Cates, brother

of the testator and a beneficiary of the residuary trust, who placed the value at $404,400. On September 12, 1960, Mr. Crouch, the auditor of the executors, at their direction wrote the Albany Real Estate Board a letter asking them to make an appraisal of the real estate then owned by the estate of Russell R. Cates for the purpose of distribution of the estate under the terms of the will. This the Board did, placing a value of $200,325 on it. This value of the real estate was used by the executors in transferring property to the trustees for the marital trust.

It is significant that the executors selected the Albany Real Estate Board to fix the value of the real estate for purposes of distribution of the estate, that the Board is recognized as impartial, that each of the plaintiff's witnesses testified that they considered the members of the Board competent to judge values of real estate in Albany, and each, with the exception of Albert Cates, stated that in dividing an estate they would feel justified in following the appraisal of the Board, and Albert Cates did not accuse the Board of bad faith but only disagreed with their values. There is no evidence whatever that the executors acted fraudulently or in bad faith in selecting the Albany Real Estate Board to make the appraisal, nor is there any evidence, nor even a charge, that the Real Estate Board acted capriciously or in bad faith in fixing the value of the real estate, and the evidence is that the Board is fair, impartial, and competent. How then could it be said that the executors acted capriciously, or in bad faith, or fraudulently in using the values fixed by that Board in creating the marital trust? It cannot be. Accordingly, without other evidence of fraud, and there is none, we must conclude that the trial court was correct in finding that there was no evidence of fraud or bad faith on the part of the executors in transferring the real estate at the values placed upon it by the Albany Real Estate Board to the marital trust.

As to Empire Produce Company, the plaintiffs contend that the 517 shares of stock (which was all of the stock except for three shares) were transferred to the marital trust at a value of $41,456.31 when an audit made by John W. Crouch, the auditor, showed net assets of $65,640.17 as of January 31, 1960.

These figures did not include debentures owned by the Company valued at $30,480.17. The 517 shares of the Empire Produce Company and the debentures in the amount of $30,480.17 were transferred to the marital trust at a valuation of $71,936.48. Evidence of several people in Albany, who are engaged in similar businesses, and who were shown a balance sheet as of October 29, 1960, showing the company's condition, and who examined the assets, valued the business at from $60,000 to $70,000. One stated that during 1960 the executors offered to sell him the business for $65,525.57 which he considered the value of the business, but he was unable to finance it; that he, Albert Cates (one of the plaintiffs) and others were going to buy it at that price but could not agree on the management of it. Plaintiffs allege that the business was worth $100,000.

The will provided that the values established by the executors in the division of the property "shall be binding and conclusive on all persons taking hereunder." The evidence is undisputed that the executors tried to sell the property for $65,525.57 shortly before it was placed in the marital trust at $71,936.48 and there is no competent evidence in the record to support plaintiff's contention that the market value of the company was more than that at that time. Even if there were, there is no evidence of fraud, misconduct, or exercise of powers not granted in the will on the part of the executors in transferring the property for the marital trust to the trustees. The finding of the court in paragraph 3 of the judgment order and the summary judgment granted thereon are not error for any reason assigned.

4. We agree with the finding in paragraph 4 of the court's order that the undisputed evidence showed "that at the time of his death the testator held an indebtedness against his sister, Mrs. Pearl Cox, represented by a promissory note secured by a deed to certain real estate, said note and security deed being found among the effects of the deceased without any entry of cancellation thereon and the plaintiffs having introduced no competent evidence in support of their claim that said indebtedness had been forgiven and cancelled prior to the death of the deceased, the Executors properly treated said indebtedness as a part of the estate of the deceased for all purposes, including the de-

termination of the amount of the marital bequest made in trust by the testator for the use and benefit of his wife."

5. The finding in paragraph 5 "that in transferring certain real estate to the marital trust against which there had arisen since the death of the deceased a lien for paving assessment, the Executors were not required to transfer said property to the marital trust subject to such lien," was correct.

It was the duty of the executors to place one half of the property in the marital trust. The paving assessment made before distribution of the property was a debt against the estate and was deductible, with the other debts of the estate, from the assets in determining the value of the estate for purposes of distribution under the terms of the will.

6. We agree with the finding in paragraph 6 of the court's order "that there was no competent evidence to show that the executors had acted improperly in refusing to negotiate with the Standard Oil Company with respect to perfecting a lease or purchase of the property located at 1031 Broad Avenue, Albany, Georgia, nor was there any evidence to show that they had declined to enter into such negotiations in order that the marital trust might make 'an enormous profit' after said property was transferred to the marital trust; that on the contrary, it appears that the Executors were acting within their powers and a court of equity would not be justified in interfering with their discretion."

This lease had more than 10 years to run and there was no obligation upon the executors to try to secure a new lease. A proper appraisal of this property by the Albany Real Estate Board would include consideration of the lease, its terms and renewal possibilities.

7. In paragraph 7 the court made the following finding: "that under the provisions of the testator's will properly construed, upon the death of the testator's wife, Mrs. Nina Belle Cates, the death of the testator's mother, Mrs. Pitt, and the death or remarriage of the testator's secretary, Mrs. Paul, and upon the expiration of five years after the date of the death of the testator, the residuary estate is to be divided between the then surviving brothers and sisters of the testator and not before, and it

appearing without dispute that these events have not transpired, it follows as a matter of law that the plaintiffs are not entitled to recover anything from the Executors representing their interest in the estate."

The court was without question correct in this ruling.

8. The finding in paragraph 9 "that there was no evidence submitted by the plaintiffs at the hearing in support of the claim made in the petition that the testator had on hand at the time of his death the sum of $100,000.00 for which the defendants had not accounted," and in paragraph 10 "that the undisputed evidence was that the defendant Executors are amply solvent, being worth considerably more than the value which the plaintiffs claim should constitute the residuary trust," are both correct.

9. In paragraph 11 the court found that at "the time of the institution of this suit, the defendant Executors had furnished to the plaintiffs full reports with respect to the estate and had permitted the plaintiffs to examine the books and records of the estate, including the books and records of the Albany Amusement Company up until the date of the death of the testator; that at the time of the institution of this suit the Executors had not completed the administration of the estate and had not determined the final amount of commissions to which the defendant Executors were entitled under the law; and that there was no evidence showing that the defendant Executors had commingled any of the funds of the estate with their own funds or had otherwise committed any breach of trust with respect to the plaintiffs herein."

The finding is amply supported by the evidence. Since the questions of commissions and pay for services of the executors had not been finally settled the court did not rule thereon and this judgment does not constitute an adjudication on the question of commissions, fees, and pay for the services of the executors.

10. The court in view of the foregoing finding denied the prayers for an injunction enjoining the executors and trustees from commingling the assets, disposing of assets, from setting up the marital trust, and denied the prayers for the appointment of a receiver and removal of the executors and trustees, and granted the motion for summary judgment with respect to the matters set

out in paragraphs 1, 2, 3, 4, 5, 6, 7, and 9 of the findings. Having concurred with the trial judge in his findings, we are of the opinion that he properly denied the relief set out herein and properly granted the motion for summary judgment with respect to the matters set out in paragraphs 1, 2, 3, 4, 5, 6, 7, and 9 of his findings.

11. We have carefully examined the exceptions to the antecedent rulings of the court on the admission of testimony and other matters occurring during the trial of the case and find them without merit.

*Judgment affirmed. All the Justices concur.*