24073. CITIZENS & SOUTHERN NATIONAL BANK et al., Trustees v. ORKIN, by Next Friend, et al.

386

ARGUED MAY 9, 1967—DECIDED MAY 18, 1967—
REHEARING DENIED JUNE 8, 1967.

*George G. Finch, Ben Kohler, Jr., I. T. Cohen, Powell, Gold-stein, Frazer & Murphy, Robert R. Hardin, James N. Frazer, B. D. Murphy,* for appellants.

*Adair, Goldthwaite, Stanford, Daniel & Horn, T. Emory Daniel, Albert M. Horn,* for appellees.

NICHOLS, Justice. ■ The first contention of the trustees is that since the trust agreement granted to the trustees a discretion as to the amount of the money to be used for the support of Otto Orkin, the trial court was without authority to interfere with such discretion. In support of this contention they cite *Turner v. Trust Co. of Ga.,* 214 Ga. 339, 346 (105 SE2d 22), where it was held: "It is well settled that where, as here, the instruments creating the trust confer upon the trustee discretionary power to be exercised according to its judgment, a court of equity will not interfere to control the trustee, acting bona fide, in the reasonable exercise of its discretion. *Papot v. Gibson,* 7 Ga. 530; *Semmes v. Mayor &c. of Columbus,* 19 Ga. 471." Incidentally the *Turner* case was heard by the same trial judge who decided the case sub judice and he properly distinguished cases where trustees are bona fide exercising a discretion and cases where the trustees' discretion is not being exercised bona fide as

388

was shown in *Cates v. Cates*, 217 Ga. 626, 632 (124 SE2d 375), where it was held: " '. . . A discretionary power in a trustee is [not] beyond the reach of judicial inquiry. A court will interfere whenever the exercise of discretion by the trustee is infected with fraud or bad faith, misbehavior, or misconduct, arbitrariness, abuse of authority or perversion of the trust, oppression of the beneficiary, or want of ordinary skill or judgment.' 54 AmJur 228, Trusts, § 287. 'The courts will not ordinarily interpose to restrain the execution of a power, except where abuse of discretion, bad faith, or fraud is shown, or where the power is attempted to be exercised in a manner different from that authorized by the donor.' 72 CJS 430, § 34."

The evidence, presented by verified petition and answer as well as affidavits submitted on the hearing and stipulated as the evidence, amply supported the findings of the trial court quoted in part as follows: "Under the evidence in this case it appears that there has been some arbitrariness on both sides in this case. The previous expenditures and obligations incurred by Mrs. Orkin indicate some degree of irresponsibility in the handling of the funds set apart for use for the beneficiary, Mr. Orkin. On the other hand, the total cessation by the trustees of providing funds, even for a few days or a few weeks was not only arbitrariness on the part of the trustees but also a failure to perform their duties under the trust agreement. There may be some mitigating circumstances but on the other hand it is an indication of the apparent vindictiveness between some of the trustees and Mrs. Orkin. It is easily perceivable that there is at least an aura of ill feeling and bitterness between some of the parties involved in this case.

"Under the law Mr. Orkin is obligated by law for the reasonable support and maintenance of his wife, including legal necessities. See *Code* § 53-510. The case of *Thigpen v. Maddox*, 56 Ga. App. 464 (192 SE 925), is a basis for holding that support of the wife includes the cost of attorneys' fees incurred in defense of her against criminal charges as well as attorneys' fees in protecting her rights and determining her liabilities.

"The chaotic course of supporting Mr. Orkin, including proper maintenance and support for Mrs. Orkin makes it very difficult

for the court to discern a pattern of conduct which results in a stable program of compliance with the duties imposed upon the trustees.

"It appears that Mr. Orkin is in the area of 80 years of age, that while he has been adjudicated to be incompetent to manage his affairs, he still has the capacity and desire to enjoy some of the pleasures and comforts of life to which a man who, by his own efforts, has acquired substantial wealth is justly entitled. He also requires medical and professional care. In addition he has the legal obligation to support his present wife adequately and commensurately with his means and standard of living. Financial provisions for the uninterrupted continuity of these matters is the clear duty of the trustees under the trust agreement.

"Item 3 of that document provides that 'in the event of donor's (Mr. Orkin's) incapacity for any reason, the trustees shall be authorized to pay and/or use so much of the net income as they deem necessary for his care, support, comfort and welfare.'

"In Item 4 (b) of the trust instrument it is specified that 'In the event of the donor's incapacity for any reason the trustees shall have the right to encroach upon the corpus of the trust estate in such amounts and at such times as they deem proper for donor's care, support, comfort and welfare.'

"Thus it appears clear that Mr. Orkin is entitled to financial provision for his care, support, comfort and welfare whether it be from income or corpus. . . The trust should be so administered that there should be neither penurious policies on the one hand nor unbridled extravagance on the other. . . It appears from the trustees' answer and the evidence that for some time the trustees paid $4,000 per month plus some additional sums for Mr. Orkin and his wife. At another time the monthly amount was $4,500 per month and then $2,000. At other times $3,000 per month were supplied and shortly prior to the filing of this suit no sums were actually paid for a period of approximately ten days and since that time, according to the affidavit of William B. Stark, dated November 23, 1966 (page 4) 'Provision has also been made by the trustees for the payment of household needs for Mrs. Orkin, such as groceries, laundry expenses, trans-

portation by continuance of the rental of the automobile, utilities, medical expenses, domestic help and a weekly cash payment of $80 per week.' No detail of the 'provision' referred to was given and it is therefore impossible for the court to determine therefrom that the trustees have carried out their duties under the trust instrument and under the law. . . It is undisputed also that the attorneys for Mrs. Orkin who defended her in the criminal cases have not been paid. It also appears that no provision has been made for dental expenses of Mr. and Mrs. Orkin. The weekly cash payment of $80 per week to Mrs. Orkin would seem prima facie to be somewhat parsimonious under all the circumstances disclosed by the evidence in this case. . .

"Another feature of the case is the fact that the prosecution of the present Mrs. Orkin was apparently instigated by one of the trustees who says he was acting in his individual capacity and not as a trustee in his actions against the present Mrs. Orkin, the wife of Mr. Orkin. It also appears from the evidence before me that one of the attorneys for the trustees was active in the prosecution of the actions against Mrs. Orkin in Cobb County. The decisions here made have to take into account not only the background as referred to above but also the pattern of conduct engaged in by the trustees in connection with their disbursement of funds to or for the benefit of Mr. Orkin. Regardless of the obligations owed to the residual beneficiaries it is clear that the primary and major purpose of the trust instrument was to provide a secure and adequate support, maintenance and upkeep of Mr. Orkin for the balance of his life. Mr. Orkin should not be supported in a meager manner in order to preserve some corpus for distribution to the residual beneficiaries. On the other hand he deserves that support which would enable him to live comfortably in accordance with his standard of living and his station in life and the amount of money there is to carry out the primary purposes of the trust. The preservation of the corpus of the trust for the residual beneficiaries (related to one of the trustees) should not be given priority over the adequate support of Mr. Orkin. . . Some of the evidence as to the actions of the trustees about Mrs. Orkin indicate that they have been prompted in some measure by an attitude of

vindictiveness. The employment of attorneys for her originally stemmed from the action of one of the trustees and one of the attorneys for the trustees in instigating criminal prosecution against her. True they say such action was taken by them in their individual capacity. The subtle shifting of hats from trustee to individual is a little too artful for the court to be convinced of absolute purity in such Dr. Jekyll and Mr. Hyde roles. We might as well face realities as they are and concede that the individual trustees dislike the situation of Mrs. Orkin being the present wife of Mr. Orkin. But we must also be realistic in facing the fact that she *is* the wife of Mr. Orkin and see that such relationship does not impair the proper and responsible compliance by the trustees of their duties as trustees."

The facts found by the trial court being supported by the evidence, the contention that the trial court was without jurisdiction to interfere with the administration of the trust is without merit and the remaining questions to be decided are whether the individual expenditures directed to be made would have been proper under the evidence if made without direction of the court.

When the size of the trust as well as the funds furnished for the support of Otto Orkin prior to his being declared incompetent to manage his own affairs are considered it cannot be said the payments directed in the first three paragraphs of the judgment (for the support of Otto Orkin, medical expenses and allowance for his wife) are not authorized. In fact at times after Otto Orkin was declared incompetent the trustees furnished approximately the same amount decreed by the court to be furnished, while at other times they refused to furnish any money for his and his wife's support.

■ The next question for determination is whether the judgment directing the payment of attorneys' fees for services rendered the wife was proper. Pretermitting the question that no amount was set in the judge's order, it is without question that a husband is bound to provide necessaries for his wife. *Code* § 53-510. In *Thigpen v. Maddox & Griffin*, 56 Ga. App. 464, supra, the Court of Appeals held that a husband was liable for attorneys' fees incurred to defend the wife in a lunacy proceed-

ing instituted against her by her husband. The need for an attorney in such circumstances is certainly a necessity. No less is the need for an attorney when one is indicted for a criminal offense by the grand jury as was the situation in the case sub judice. The indictments did not arise out of her affairs outside the marriage but were the direct result of her guardianship of her husband. The responsibility of a solvent husband to furnish counsel for his wife in such circumstances cannot be seriously doubted, nor can it be seriously contended that the trust agreement requiring the trustees to provide for the "care, support, comfort and welfare" of Otto Orkin did not include the responsibilities placed upon him by law to "support" his wife and provide her with necessaries. As to the payment of necessaries to the wife from such a trust, see *Bailie & Brother v. McWhorter*, 56 Ga. 183 (1). The trial court did not err in directing that attorneys' fees be paid for representing Mrs. Orkin in the criminal cases.

Attorneys' fees were also directed to be paid for representing the Orkins in obtaining relief in the case sub judice. While the plaintiff sought in her own behalf and as next friend of her husband Otto Orkin to obtain support, it is an action in equity to require the proper administration of a trust, and under the decision in *Ewing v. First Nat. Bank of Atlanta*, 209 Ga. 932 (76 SE2d 791), and the cases there cited, the trial court could properly consider the request for attorneys' fees. The evidence showed that the action was necessary to obtain a proper administration of the trust and it was necessary to hold the trustees to their line of duty under the trust in properly providing support for Otto Orkin and his wife, the beneficiaries of the trust during the lifetime of Otto Orkin. Accordingly, the trial court did not err in ordering the payment of attorneys' fees to the plaintiff.

The remaining enumeration of error, which in effect held the matter of past expenses in abeyance until it could be determined from additional evidence which past due expenses were the responsibility of the trust and which were not, shows no error.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Almand, P. J., and Grice, J., who dissent.*

ALMAND, Presiding Justice, dissenting. With due deference to the opinion of the majority under the record as I view it, I am compelled to dissent. Under the trust agreement set up inter vivos by Mr. Orkin, the designated trustees were authorized in the event of Mr. Orkin's incapacity for any reason "to pay and/or use so much of the net income as they deem necessary for his care, support, comfort and welfare" with the right to encroach upon the corpus of the trust "in such amounts and at such times as they deem proper for donor's care, support, comfort and welfare." It is well settled that where the instrument creating the trust confers upon the trustees a broad discretionary power to be exercised according to their judgment, a court of equity will not interfere to control the trustees acting bona fide in the reasonable exercise of their discretion. *Semmes v. Mayor &c. of Columbus*, 19 Ga. 471, 489; *Turner v. Trust Co. of Ga.*, 214 Ga. 339 (105 SE2d 22). The evidence in the record does not authorize a finding that the trustees' acts in administering the trust were in bad faith.

I am of the further opinion that the trust fund can not be used to pay counsel for Mrs. Orkin in representing her in criminal cases growing out of her acts as guardian for her husband, nor is the trust fund liable for the expenses of bringing the present action. Neither of these acts of her counsel sought for its purpose to preserve or conserve the trust estate. The case of *Ewing v. First Nat. Bank of Atlanta*, 209 Ga. 932 (76 SE2d 791) does not support the appellees' claim. In that case the beneficiary of the trust estate was contesting an effort on the part of the trustees and others to violate the terms of the testator's will. It was held that the beneficiary's efforts being to protect, conserve and preserve the trust estate, she was entitled to be heard on her claim for counsel fees.

Chief Justice Duckworth and Justice Grice concur in this dissent.