### 29116. WOODRUFF v. TRUST COMPANY OF GEORGIA.

JORDAN, Justice.

This is an appeal from the denial of the appellant's motion for summary judgment and involves the construction of a trust instrument.

The trust was created in 1960 when the appellant Mrs. Frances Woodruff executed a trust agreement naming the appellee Trust Company of Georgia as the trustee.

Item I of the trust gave the settlor, Mrs. Woodruff, the right to alter, amend, or revoke the trust at any time. In 1962 Mrs. Woodruff amended the trust by striking Item I and inserting a new Item I which reads as follows: "Donor reserves the right to alter, amend, modify or revoke this trust in whole or in part at any time and from time to time by instrument in writing signed by donor and delivered to trustee, but only with the written consent and approval of the trustee. This trust shall be irrevocable except with the written consent and approval

of the trustee."

Item II of the trust provided that during the life of the donor the net income from the trust be paid to her and that "Upon Donor's death, all property remaining in this trust, whether corpus or income, shall be payable to her personal representative." Item II further authorized the trustee from time to time to encroach on the corpus "in such amounts as Donor may request or, if Donor is unable because of illness or other causes to act for herself in such amounts as Trustee in its discretion may deem necessary to provide for the proper support of Donor."

In 1967, Mrs. Woodruff was adjudged incompetent, and guardians were appointed for her person and her property. On October 1, 1973, the guardian for her person was discharged. Subsequent to November 6, 1973, Mrs. Woodruff's competency was restored, and the Trust Company was discharged as guardian of her property. The Trust Company, as guardian of the property of Mrs. Woodruff, employed a law firm to represent it in opposition to the proceedings initiated by Mrs. Woodruff for the restoration of her competency.

On January 8, 1974, Mrs. Woodruff requested that the Trust Company encroach upon the principal of the trust by selling a certain amount of stock, and placing the proceeds in her checking account. She also requested that sufficient stock be sold to pay her attorney who represented her in the competency proceedings. The Trust Company refused these requests.

On February 1, 1974, the Trust Company filed a petition for declaration of rights against Mrs. Woodruff as a defendant, asking for direction on the following questions:

"(1) Whether plaintiff has a discretion to pay funds from principal of the subject Trust for the support of defendant, or whether plaintiff must pay out any and all funds from principal which may be requested by defendant;

"(2) whether defendant has the right to revoke the subject Trust Agreement without the consent of plaintiff;

"(3) whether plaintiff may use trust assets for the payment of fees and expenses incurred by plaintiff's attorneys who were employed by plaintiff in its former

capacity as guardian of the property of defendant for the purpose of aiding the Court in determining defendant's capacity to manage her own financial affairs;

"(4) whether the amount of the aforesaid legal fees owing —————— for services rendered to Trust Company as guardian of defendant's property, is reasonable and proper."

In her answer to the petition for Declaration of Rights, Mrs. Woodruff alleged that the trust agreement had been revoked and terminated by a letter from her on February 5, 1974. She denied that the attorneys for the Trust Company as guardian had rendered any beneficial service to her by opposing her restoration of competency, and contended that the Trust Company could not legally encroach on the corpus of her trust fund for the payment of fees to said attorneys. She further attacked the constitutionality of Ga. L. 1973, p. 844 et seq., as it applied to her.

Both parties filed motions for summary judgment. After a hearing, the trial judge entered an order and opinion which denied both motions for summary judgment. The trial court held as a matter of law that the trust is revocable only with the written consent and approval of the trustee; that the Trust Company has a discretionary power to grant or deny requests for trust encroachment; and that if the trier of fact determined that the Trust Company, as guardian of the person of Mrs. Woodruff, acted in good faith in opposing her restoration of competency, then the Trust Company was entitled to use trust assets for the payment of attorney fees. In a subsequent order the court also held that Ga. L. 1973, p. 844 et seq. (Code Ann. § 108-111.1), was constitutional as applied to this case.

On appeal Mrs. Woodruff contends that she can revoke the trust without the trustee's consent; that Ga. L. 1973, p. 844 et seq. (Code Ann. § 108-111.1), is unconstitutional as applied to her, and that the question of the liability of the Trust Company for legal expenses incurred as guardian of Mrs. Woodruff's property should not be determined in this action. *Held:*

1. First, we conclude that under the terms of this trust, Mrs. Woodruff occupies the status of settlor-sole

beneficiary since at no time during the existence of the trust has she named any beneficiary, contingent or otherwise, of the trust other than herself or her personal representative. The settlor of a trust is "the sole beneficiary where he transfers property in trust to pay the income to himself for life and on his death to pay the principal to his estate. . ." So also, the settlor is the sole beneficiary where he transfers property in trust to pay the income to himself for life and upon his death to convey the principal as he may by deed or will appoint. Restatement, Trusts 2d, § 127.

The threshhold question here is whether such a settlor-sole beneficiary has the right to terminate the trust regardless of the provisions for revocability or irrevocability in the trust instrument itself.

In our opinion this question was answered in the affirmative in *Moore v. First Nat. Bank &c. Co. of Macon,* 218 Ga. 798 (130 SE2d 718). In that case we clearly held that a settlor-sole beneficiary of an inter vivos trust could terminate that trust even though the trust was by its terms irrevocable. This right of the settlor-sole beneficiary to terminate his own trust is not a right derived from the terms of the trust agreement, but an inherent right which exists outside of and extraneous to the trust agreement. See Scott on Trusts (3d Ed.), § 339. The nature of a settlor-sole beneficiary trust embraces this right simply because no one else has any interest in the trust. Who would have any standing to object to the ending of the trust? The trustee has no vested right to insist upon the continuance of the trust, for as we said in *Moore,* supra (p. 802), "the incidental benefit which the trustee may derive from future commissions is not of such a character as gives it a vested right to the continuance of the trust." The trustee as such is not the beneficiary of the trust. Restatement, Trusts 2d, p. 159, § 337, Comment (b).

Because we conclude that *Moore,* supra, is dispositive of this issue we quote Headnote 3, the relevant portion of that case. "Did Mrs. Moore have a right to terminate the trust she created in 1957 for her own life benefit and for the benefit of 'such other persons after her death as she may by deed or will designate?' The trial

judge held that she did not; but, as to this, we think he erred. While it is true that the instrument she executed expressly states that it is irrevocable, it is also true that she is the only person named by it as a beneficiary, and the record shows that she has not since the date of its execution designated any other person as a beneficiary of the trust she created. In these circumstances, she is the only person interested in the trust she created (Scott on Trusts, 2d Ed., 908, § 127.1; Restatement, Trusts, 2d Ed., 272, § 127, Comment b); and being such, she, as the settlor thereof, unquestionably had a right to terminate it, even though the trust instrument specifically provides that it shall be irrevocable. Scott on Trusts (2d Ed.), 2481, § 339; Restatement, Trusts (2d Ed.) 171, § 339, Comment a; 89 CJS, Trusts, 907, § 88 e; Doyle v. Bank of Montclair, 9 N. J. Super. 586 (76 A2d 41). Since Mrs. Moore, as the settlor of this trust, and the only person presently interested in it, desires to retake her property and manage it herself, we are of the opinion she should be permitted to do so. The instrument was her voluntary act; it was without consideration; and, as we have said, it presently affects no one but herself. . . If she had a right, as we hold she did, to terminate the trust agreement, she certainly had a right to revoke the declaration that it is 'irrevocable.'" Accordingly, if Mrs. Moore's right to terminate included the right to eliminate the express declaration that the trust was irrevocable, then we must conclude that the appellant's right to terminate her trust includes the right to eliminate the provision prohibiting revocation except with the trustee's consent.

The trial court concluded that *Moore* did not apply in this case because *Moore* dealt with an irrevocable trust while the instant trust was revocable with the trustee's consent. This distinction overlooks the fact that both cases deal with a settlor who is also sole beneficiary and that, with reference to the right to terminate, the terms of a trust agreement relative to revocation become immaterial once it is established that the settlor and the beneficiary are one and the same. The settlor can terminate the trust, if he is not under an incapacity, because he is both the settlor and the sole beneficiary of the trust.

In the present case, so long as the trust was viable, Mrs. Woodruff was bound by the terms of the agreement, under which she could not revoke the trust without the consent of the trustee. Since this consent was not given she was unable to end the trust under the terms of the trust instrument. Subsequently, she had the right as the settlor-sole beneficiary to terminate the trust which she created for her sole benefit.

The appellee vigorously contends that this case is controlled by the law as stated in Restatement, Trusts 2d, § 330 and Scott on Trusts (3d Ed.) § 330.9, p. 2610. While these sections state general rules dealing with the revocation of a trust by a settlor, we feel, as we did in *Moore,* that the apposite reference is § 339 of the Restatement and Scott which deal specifically with the settlor as sole beneficiary.

For the reasons set forth in this division, the trial court erred in failing to grant Mrs. Woodruff's motion for summary judgment on this issue.

2. We now turn to the applicability of Ga. L. 1973, p. 844 et seq., to trusts which were created prior to the effective date of that Act. This 1973 statute amended Code Ann. § 108-111.1 to provide that no executory trust "expressly or impliedly made irrevocable may be revoked or terminated in whole or in part" and declared that it shall apply to all executory trusts "whether in existence on the effective date of this Act, or created hereafter." The apparent purpose of this 1973 amendment was to nullify the ruling of this court in *Moore,* supra.

Since the trial court held that the consent of the trustee was necessary to revoke the trust, he concluded that Mrs. Woodruff's right was contingent upon that consent, and therefore the 1973 statute was not unconstitutional as applied to this case because the constitutional prohibition was only against the retroactive impairment of *vested* rights.

Our Constitution prohibits the passage of a retroactive law. Code Ann. § 2-302 (Const. 1945, Art. I, Sec. III, Par. II). A statute is retroactive in its legal sense which creates a new obligation on transactions or considerations already past, or destroys or impairs vested rights. *Ross v. Lettice,* 134 Ga. 866 (68 SE 734, 137 ASR

281). An estate is vested when there is an immediate right of enjoyment or a present fixed right of future enjoyment. *Gilmore v. Gilmore,* 197 Ga. 303, 314 (29 SE2d 74); *Lumpkin v. Patterson,* 170 Ga. 94 (7) (152 SE 448).

Since Mrs. Woodruff had an immediate right to terminate the trust, a right recognized in *Moore,* her right was vested, and as such cannot be constitutionally impaired. Therefore, Ga. L. 1973, p. 844 is unconstitutional insofar as it would divest Mrs. Woodruff of this right.

3.  In the view that we have taken of this case it is unnecessary to determine whether the authority granted the trustee to encroach upon the corpus under Item II of the trust was mandatory or permissive.

4.  The trial court held that where a ward's mental condition is in doubt, and the guardian acts in good faith in opposing his petition for restoration, the guardian is entitled to recover reasonable and necessary expenses so incurred, including attorney fees. With this we agree. Code Ann. § 49-202. See also Code Ann. § 49-241; In re Cookingham's Estate, 284 P2d 51.

Furthermore the court held that a showing of good faith was a prerequisite to recovery, said showing presenting a factual issue that must be resolved by the trier of fact. With this we also agree.

The more difficult question is whether, upon a showing of good faith, the guardian should be permitted to recover attorney fees from the trustee of the ward-beneficiary. We note that we are not dealing with a spendthrift trust where there are beneficiaries other than the settlor. Consequently the trust assets are available to satisfy creditors of the beneficiary. The root question becomes whether the guardian, who is entitled to recover attorney fees and expenses, can look to the trust assets, or must look to the ward. In other words, since Mrs. Woodruff is entitled to terminate her trust, may the guardian be compensated from the trust assets before they are distributed to Mrs. Woodruff, or must the guardian seek recovery from Mrs. Woodruff individually.

The guardian estate and the trust estate are separate and distinct. In *Hardy v. C. & S. Nat. Bank,* 224 Ga. 654 (164 SE2d 144) we held that any claim for services

rendered to an individual in her capacity as guardian would be chargeable only against the estate or property in the hands of the guardian. In that case, attorneys allegedly rendered services to the wife of the beneficiary of a trust in her capacity as guardian of his property. The attorneys sought compensation from the corporate trustee after the wife was removed as guardian of the beneficiary's property. Although the trustee had the right to encroach upon the corpus for the beneficiary's care and support in the event of the beneficiary's incapacity, the trustee could not be bound by the guardian where there was no evidence that the attorneys ever rendered any service to the trustee or that the trustee ever consented to the guardian's incurring indebtedness to the attorneys for rendering legal services to her in the ward's estate.

An obvious difference between this case and *Hardy* is the fact that here the trustee and guardian are one and the same. In such dual capacity the trustee asserts that it consented to the employment of attorneys by the guardian, and in so doing it was, under the terms of the trust, "providing for proper support" for Mrs. Woodruff, which it was required to do under Item II, since she was incompetent, and of course could not terminate the trust at that time.

In *Citizens & Southern Nat. Bank v. Orkin,* 223 Ga. 385 (156 SE2d 86) we held that attorney fees could be awarded out of the trust estate to the wife of the beneficiary where the husband was bound to provide necessaries for his wife, in effect holding that attorney fees were necessaries under some circumstances.

Under the circumstances in the present case we are of the opinion that attorney fees may be paid from the trust estate prior to its distribution where the trustee consents to the employment of counsel by the guardian, on the condition that the trustee acted in the good faith belief that continued guardianship was a desirable component of its duty to provide proper support for the beneficiary. See Restatement, Trusts 2d, § 188, Comment b, p. 411.

*Judgment reversed in part; affirmed in part. All the Justices concur.*

ARGUED SEPTEMBER 13, 1974 — DECIDED OCTOBER 29, 1974.

*Alex McLennan,* for appellant.
*King & Spalding, Jack H. Watson, Jr., James M. Sibley, John A. Wallace, Arthur K. Bolton, Attorney General,* for appellee.
*Verner F. Chaffin,* amicus curiae.