## 30507. TRUST COMPANY OF GEORGIA v. WOODRUFF.

GUNTER, Justice.

This litigation has made its way through the legal mills to this court for the second time. In *Woodruff v. Trust Co. of Ga.,* 233 Ga. 135 (210 SE2d 321) (1974), we ruled that Mrs. Woodruff could unilaterally revoke the trust that she had created for herself as sole beneficiary without the affirmative approval of the trustee even though the trust instrument itself contained language which read: "This trust shall be irrevocable except with the written consent and approval of the trustee." In that case the trial judge had ruled that the trust was revocable only with the affirmative consent and approval of the trustee. Therefore, our decision reversed the trial court on this issue.

Our decision in that case was rendered on October 29, 1974. On November 11, 1974, following this court's decision but before this court's remittitur had reached the trial court, the trustee filed in the trial court a petition for a final accounting with Mrs. Woodruff. This petition sought: "In accordance with the Supreme Court's ruling, Trust Company respectfully seeks this Court's direction with respect to a final distribution of the trust assets upon

termination of the trust." On November 14, 1974, Mrs. Woodruff filed her response to the petition, and in it she demanded the immediate delivery of the trust assets from the trustee to her, and she further contended that the trustee was liable to her for the decrease in the value of the assets which had occurred between February 5, 1974, the date of her unilateral revocation of the trust, and the date of delivery of the assets by the trustee to her. Thereafter, on January 21, 1975, some two months after the assets had been delivered by the trustee to Mrs. Woodruff, she amended her response by detailing the decrease in the value of the assets between February 5, 1974 and the date of actual delivery.

The remittitur of the Supreme Court of Georgia, containing the decision of this court reversing the trial court on the revocation issue, reached the trial court and was filed there on November 15, 1974. On November 18, 1974, the trial judge entered the following judgment: "Upon considering the within Remittitur, it is ordered and adjudged that the decision of the Supreme Court of the State of Georgia be made the judgment of this court, and that the same be entered on the minutes." Also, on November 18, 1974, the trial judge entered another judgment on the application of Mrs. Woodruff which directed the trustee to deliver all of the trust assets (with the exception of a specified amount to be withheld for distribution upon further order of the court) to Mrs. Woodruff not later than 48 hours after the entry of the judgment. This judgment directed that proper receipts be given to the trustee upon actual delivery, and it ordered that all further issues remaining in the case were reserved for future determination by the court. Distribution of the trust assets by the trustee to Mrs. Woodruff in accordance with this judgment was accomplished on November 19 and November 20, 1974.

On January 21, 1975, Mrs. Woodruff moved for a summary judgment against the trustee in an amount that she alleged to be due because of the decrease in the value of the trust assets from the date of her unilateral revocation of the trust, February 5, 1974, to the dates of the actual delivery of the assets, November 19, 20, 1974.

On January 30, 1975, the trustee filed a motion for

summary judgment in its favor in which it contended that it was entitled to seek the trial court's direction "as to whether or not the subject trust agreement, which expressly required the Trustee's consent to revocation, could be terminated unilaterally by defendant, and to withhold distribution of the trust assets until a final judgment had been entered on this issue."

On August 12, 1975, the trial judge entered a judgment overruling and denying both Mrs. Woodruff's and the trustee's motions for summary judgment. Both parties applied to this court for interlocutory appeals, and we granted both applications. Mrs. Woodruff did not procedurally effect her interlocutory appeal which was allowed, but the trustee did. The issue we now have for decision is whether the trustee's motion for summary judgment should or should not have been granted by the trial court.

We conclude that the trustee's motion for summary judgment should have been granted, and we therefore reverse the judgment below.

Under the circumstances factually shown by the record in this case we hold that, as between Mrs. Woodruff and the trustee, the trust revocation occurred on November 18, 1974, when the judgment of the Supreme Court of Georgia, reversing the judgment of the trial court and ruling that unilateral revocation was proper, was made the judgment of the trial court. It was only at that point that the trust was revoked, because the prevailing judgment of the trial court prior thereto had held that there could be no revocation without the affirmative approval of the trustee. Within forty-eight hours after November 18, the trustee delivered the trust assets to Mrs. Woodruff in accordance with the trial court's direction, and there can be no liability, as a matter of law, on the part of the trustee for any decrease in the value of the assets between revocation and delivery.

When the trust was created in 1960 it was plainly and clearly unilaterally revocable by Mrs. Woodruff. However, in 1962 the trust instrument was amended by inserting language that, on its face, permitted revocation only with the affirmative approval of the trustee. Mrs. Woodruff was thereafter adjudicated incompetent. On

December 7, 1973, Mrs. Woodruff was adjudicated to be competent to manage her own property and affairs. On January 8, 1974, Mrs. Woodruff requested and demanded that the trustee encroach upon the trust assets in the amount of $1,123,375.34. The trustee responded by requesting documentation of the purposes for which such sum was to be used. No such documentation was provided by Mrs. Woodruff. On February 1, 1974, the trustee filed a complaint for declaratory judgment which sought direction of Fulton Superior Court in its administration of the trust. The complaint also sought a determination of whether Mrs. Woodruff could unilaterally revoke the trust, without the affirmative approval of the trustee, even though at the time of the filing of the complaint Mrs. Woodruff had not attempted unilateral revocation. Four days after the trustee's complaint was filed, Mrs. Woodruff took action to unilaterally revoke the trust. The trial court thereafter ruled that there could be no revocation without the affirmative approval of the trustee, Mrs. Woodruff appealed that adverse judgment to this court, and we reversed. *Woodruff v. Trust Co. of Ga.,* supra.

We hold that unilateral revocation or non-unilateral revocation was a justiciable issue in this case, and this is especially so since the trial court initially ruled in favor of the trustee on this issue. Therefore, pending termination of the litigation on this issue, there was no liability on the part of the trustee for a decrease in the value of the trust assets pending the litigation.

Under Georgia law the trustee of an executory trust (Code Ann. § 108-111.1) has rights that it may enforce as well as obligations that flow from the trustee to the settlor or beneficiary. Trustees are entitled to compensation for their services, Code Ann. § 108-432; and since a legislative enactment in 1973, an executory trust, established since the effective date of that statute, which is expressly or impliedly made irrevocable, may not be revoked or terminated in whole or in part while the trust is executory. Code Ann. § 108-111.1. We held in *Woodruff v. Trust Co. of Ga.,* supra, that this 1973 enactment could not be constitutionally applied to this allegedly irrevocable trust because the language of irrevocability

224

here was inserted in the trust instrument prior to the effective date of the 1973 statute. But that was the first time that this court had applied, construed, or declined to apply the 1973 statute.

Trustees in Georgia also have a right to have a declaration of rights by declaratory judgment for direction from the court to the trustees "to do or abstain from doing any particular act in their fiduciary capacity" or "[t]o determine any question arising in the administration" of the trust, including questions of construction of the trust instrument itself. Code Ann. § 110-1107.

In this case the trustee sought a declaration of rights by declaratory judgment of the issue of unilateral revocation prior to any act on the settlor-beneficiary's part to revoke unilaterally. After instituting the litigation, the trustee in this case had a right to a court determination of this issue, and under these circumstances the trustee cannot, as a matter of law, be successfully charged with "bad faith" in delaying distribution pending the final end of the litigation. In short, we hold in this case that the application by the trustee for a declaratory judgment on the issue of unilateral revocation was not based "on imaginary difficulties or from excessive caution." Code Ann. § 37-404.

To conclude: The unilateral revocation of the trust in this case was effective on November 18, 1974, the trust assets were delivered by the trustee to Mrs. Woodruff within 48 hours thereafter, and the trustee is not liable for any decrease in the value of the trust assets that may have occurred between revocation of the trust and delivery of the assets by the trustee.

*Judgment reversed. All the Justices concur, except Nichols, C. J., and Hall, J., who dissent.*

ARGUED NOVEMBER 17, 1975 — DECIDED JANUARY 27, 1976 — REHEARING DENIED FEBRUARY 11, 1976.

*King & Spalding, Charles H. Kirbo, Jack H. Watson, Jr., Neill G. McBryde,* for appellant.

*Alex McLennan,* for appellee.

HALL, Justice, dissenting.

The heart of the majority opinion is its unarticulated adoption of the position argued by Trust Company on this appeal, namely, that even if Trust Company had behaved with bad faith toward Mrs. Woodruff, which is what she asserts, and even if this bad faith had occasioned her the loss of four million dollars, nonetheless Trust Company was entitled to prevail on a motion for summary judgment in her suit to recover the loss. Thus, Trust Company argues that the bad faith of a trustee is irrelevant. This argument, adopted by the majority, must rest on this purported statement of trust law: A trustee is absolutely entitled to file a petition for declaration of rights and to litigate it against his beneficiary to the bitter end, so long as there is some mere possibility that the trustee's claimed confusion over trust language might be genuine, even if the record should show that the trustee is motivated to file the petition by bad faith toward his beneficiary, and does so for the purpose of delay and harassment only.

This simply misstates trust law. The authorities are crystal clear that in the decision to file a petition for declaration of rights — as in every other decision that a trustee makes — he is held to the standard of absolute good faith. See Restatement 2d, Trusts, § 186 comments e, f; § 187 comments c, d; § 330 comment e (1959); Bogert, Trusts and Trustees, § 543, p. 526; § 543(T) (2d ed. 1960); 2 Scott on Trusts, p. 1297, § 170 (3d ed.); Fulton Nat. Bank v. Tate, 363 F2d 562, 571 (5th Cir. 1966); *C. & S. Nat. Bank v. Orkin,* 223 Ga. 385, 388 (156 SE2d 86) (1967); *Springer v. Cox,* 221 Ga. 673, 676 (146 SE2d 753) (1966); *Cates v. Cates,* 217 Ga. 626, 632 (124 SE2d 375) (1962).

In order to prevail on its motion, Trust Company was required to negate all possibility that Mrs. Woodruff could prevail on her claim; to carry the burden on all points, even those on which she would have the trial burden; to allow the construction of all inferences in her favor; and to show that there were no material issues of fact yet to be decided. E.g., *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866) (1971).

In my opinion Trust Company failed to carry this burden, and genuine issues of material fact remain to be tried by a jury. Therefore, I dissent.

I am authorized to state that Chief Justice Nichols concurs in this dissent.