## A10A1689. McPHERSON v. McPHERSON et al.
### (705 SE2d 314)

ANDREWS, Judge.

Eric McPherson brought this action for breach of duty against his father Howard McPherson (the settlor of the McPherson Family Trust), his three adult siblings (three of the four current trustees), and his father's longtime counsel (the fourth current trustee). On appeal from the trial court's grant of summary judgment to all five defendants, Eric argues that the trustees abused their discretion when they made distributions from the trust between 2005 and 2008 and when they withheld the amount of fees spent to defend against an earlier version of his suit from his 2005 distribution. Eric also asserts that his father did not have the power to remove him as a trustee. We find no error and affirm.

On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

The relevant facts are not in dispute. In 1990, Howard E. McPherson established an irrevocable trust. At that time, Howard had four adult children from his first marriage: Scott, Lisa, Robin, and Eric. The trust instrument provided that during Howard's lifetime,

> [t]he Trustee shall . . . have the *discretion* to pay out of income, if any, or principal or both of this trust such amount or amounts, *whether equal or unequal* and whether the whole or a lesser amount, to the Trustor's children . . . as may be needed for their support, maintenance, education and medical needs in reasonable comfort, *taking into consideration any other means of support they or any of them may have to the knowledge of the Trustee.*

(Emphasis supplied.) Apart from the trustees' duty to consider "any other means of support" the children might have, the trust limited what it continued to describe as their "discretion" in only two respects: at Howard's death, and concerning the beneficiaries' power to withdraw small amounts equal to or less than the federal gift exclusion after each transfer to the trust by Howard. The trust also included a so-called "exculpatory clause" to the effect that "the receipt [of any trust payment of income or principal] of the person to whom payment is made or entrusted shall be a complete discharge of the Trustee in respect thereof." Finally, the trust provided Howard

with "the right at any time, and from time to time, to remove any trustee for reasonable cause and thereafter appoint another," with the limitation that Howard could not appoint himself as a trustee.

In 1992, Scott McPherson consented to the addition of his three siblings as co-trustees. In the years following, Howard remarried, had one son (also named Howard) by his second wife, and transferred his ownership interest in assets including three highly profitable real estate companies to the trust. Between 1992 and 2005, while he was a trustee, Eric participated in and received his equal share of distributions from the trust. These distributions, which are not at issue, were made in accordance with Howard's wish that his children be treated equally.

In June 2004, Howard warned Eric that he was considering removing Eric as a co-trustee because of his difficult behavior, including refusing to sign legal documents after verbally promising to do so, placing his girlfriend on the company payroll, and threatening to sue his siblings. A few months after he received this letter, Eric sued his siblings for the first time. In March 2005, Howard removed Eric and replaced him with Frank Hendrick, Howard's lawyer.

In July 2005, the trustees elected to distribute $300,000 of trust income per stirpes to each McPherson child. $50,000 of Eric's share was given to sub-trusts created for the benefit of Eric's children. One of the trustees' motives in establishing the sub-trusts was to create additional resources for Eric's children after his submission of a false affidavit in support of a request to reduce his child support obligations in Florida. Of the $250,000 remaining to Eric from this 2005 distribution, the trustees directed that $157,000 be deducted to account for the expense of defending the trust from his first suit. The resulting check for $93,000 was sent to Eric, who negotiated the check without objection. Between August 2005 and December 2008, Scott, Lisa, Robin, and the minor Howard received $2,240,000 per stirpes from the trust. Eric received $1,553,000 and his two children $265,000 each for a per stirpes total of $2,083,000 — precisely $157,000 less than his siblings.

Eric brought this version of his action in July 2006. In his amended petition, filed in April 2009, Eric alleged that the trustees' distributions from 2005 through 2008, and in particular their 2005 withholding of the $157,000 spent to defend them from his suit, violated their fiduciary duties under the trust. Eric also sought an injunction against Howard for removing him as co-trustee as well as an accounting. The trustees moved for summary judgment on grounds including that they did not abuse their discretion in making their distributions. Howard moved for summary judgment concerning his appointment power. Although the trial court indicated at a

hearing that it would grant Eric summary judgment on his breach-of-trust claim because the trustees had failed to make any inquiry into each beneficiary's resources and needs, it later asked for and obtained additional briefing on the issue of Eric's waiver and then ruled for the defendants on all counts.

1. Eric first argues that the trustees abused their discretion in making the 2005-2008 distributions because they were required to take account of the needs of each of Howard's children — the youngest of whom, for example, was a minor still living at home with his father. We disagree.

We will affirm a grant of summary judgment if it is right for any reason raised below. *City of Gainesville v. Dodd*, 275 Ga. 834, 836-837 (573 SE2d 369) (2002). Pretermitting whether Eric waived his objections to the 2005-2008 distributions, we first consider whether the trial court should have granted summary judgment to the trustees on the primary ground urged below: that is, that they did not abuse their discretion or act in bad faith when they made these distributions.

(a) Effective on July 1, 2010, after this case was docketed in this Court, the Revised Georgia Trust Code, OCGA § 53-12-1 et seq., applies "to any trust regardless of the date such trust was created," with two exceptions: "to the extent it would impair vested rights," and "as otherwise provided by law." OCGA § 53-12-1 (b); see also former OCGA § 53-12-3, Ga. L. 1991, p. 810, § 1 (providing the same concerning the Georgia Trust Act of 1991); *Woodruff v. Trust Co. of Ga.*, 233 Ga. 135, 140-141 (2) (210 SE2d 321) (1974) (a statute is impermissibly retroactive when it "creates a new obligation on transactions or considerations already past, or destroys or impairs vested rights," with such rights having vested "when there is an immediate right of enjoyment or a present fixed right of future enjoyment").

Although the Revised Trust Code does not require a trustee to consider "the resources of any beneficiary when determining whether to distribute trust property," OCGA § 53-12-245, the trust instrument before us affirmatively directs the trustees to do so, with this and other variances authorized by the Revised Trust Code itself. See OCGA § 53-12-7 (specifying those provisions, not including OCGA § 53-12-245, which a trust instrument may not vary). Like the common law before it, moreover, the Revised Trust Code mandates that a trustee's discretionary powers be exercised "in good faith." OCGA § 53-12-260; see also OCGA § 53-12-7 (a) (4) (trust instrument may not vary this good faith requirement); *C & S Nat. Bank v. Haskins*, 254 Ga. 131, 141 (9) (327 SE2d 192) (1985). Even assuming that past distributions under the Trust amount to "vested rights," then, Eric cannot show that the Revised Trust Code creates any new

trustees' obligations or impairs those rights in any relevant way. We therefore proceed under the Revised Trust Code as supplemented by the common law. See *Jordan v. Caswell*, 264 Ga. 638, 639-640 (2) (450 SE2d 818) (1994) (applying Trust Act of 1991 to trust created before effective date of that Act where appellant failed to show how such application would deprive him of vested rights); OCGA § 53-12-3 (common law and equity principles survive under the Revised Trust Code "[e]xcept to the extent that [they] are modified by this chapter or another provision of law").

(b) For a fuller understanding of the scope of a trustee's discretion, the Revised Trust Code directs us to the common law, including the Restatements of the law of trusts. See Comment to former OCGA § 53-12-190 (citing Restatement (Second) of Trusts concerning extent of trustee's powers); *Woodruff*, 233 Ga. at 138-140 (1) (citing Second Restatement concerning settlor's power to revoke a trust); *SunTrust Bank v. Merritt*, 272 Ga. App. 485, 489 (1), n. 14 (612 SE2d 818) (2005) (citing Restatement (Third) of Trusts concerning trustee's duties).

The Third Restatement § 50 (2003) circumscribes a trustee's discretionary power as follows:

> (1) A discretionary power conferred upon the trustee to determine the benefits of a trust beneficiary is *subject to judicial control only to prevent misinterpretation or abuse of the discretion* by the trustee.
>
> (2) The benefits to which a beneficiary of a discretionary interest is entitled, and what may constitute an abuse of discretion by the trustee, *depend on the terms of the discretion, including the proper construction of any accompanying standards, and on the settlor's purposes in granting the discretionary power and in creating the trust.*

(Emphasis supplied.) Thus, as the common law has long had it, a court may interpose its judgment on the performance of a trustee vested with discretion to make payments to a beneficiary only when the trustee "arbitrarily declines to make any payment" or when the trustee "is acting from improper motives in exercising discretion." *C & S Nat. Bank*, 254 Ga. at 141 (9). "The question of motives and conflict of interest arises when the trust gives discretionary powers to make payments to a trustee who is also the beneficiary of such payments." Id.

As we have noted, the trust instrument at issue here directed the trustees to consider the resources of the beneficiaries even as the

trustees retained "some discretion in the matter." Restatement (Third) of Trusts § 50, Comment e. In such cases,

> the *presumption* is that the trustee is to take the beneficiary's other resources into account in determining whether and in what amounts distributions are to be made, *except insofar as, in the trustee's discretionary judgment, the settlor's intended treatment of the beneficiary or the purposes of the trust will in some respect be better accomplished by not doing so.*

(Emphasis supplied.) Id. And when, as here, "multiple beneficiaries or groups" are "concurrent discretionary distributees," "there is an inference of priorities *per stirpes*, that is, that the various lines are entitled to similar, impartial (but not necessarily equal) treatment, *with disparities to be justified on a principled basis consistent with the trust purposes.*" (Citation omitted; emphasis supplied.) Id., Comment f.

Eric has not shown this Court evidence that the trustees ignored the beneficiaries' means of support. But even if he had done so, these trustees could, in their discretion, exclude the beneficiaries' resources from their consideration on the basis of both (i) the trust instrument's grant to distribute "either equal or unequal" amounts to *each* of Howard's children, making no distinction between those from a first or a subsequent marriage, and (ii) the trustees' personal knowledge concerning Howard's intended treatment of them. And the result of this exercise of discretionary power was equal per stirpes distributions, keeping in reserve their capacity (as they later testified) to meet any "extraordinary need" on "a case-by-case basis."

"In trust law, the cardinal rule is that the trustor-settlor's intention be followed." *Griffith v. First Nat. Bank & Trust Co.*, 249 Ga. 143, 146 (1) (287 SE2d 526) (1982). As the Revised Trust Code and the common law agree, moreover, a court may interfere with an exercise of discretion by a trustee only if that discretion is "infected with fraud or bad faith, misbehavior, or misconduct, arbitrariness, abuse of authority or perversion of the trust, oppression of the beneficiary, or want of ordinary skill or judgment." (Citation and punctuation omitted.) *C & S Nat. Bank*, 254 Ga. at 142 (9); OCGA § 53-12-260 (trustee must act "in good faith"). Without some evidence of bad faith, of which this record provides none, we cannot authorize judicial intervention into the trustees' consistent decisions to treat all beneficiaries, including themselves, equally in the form of per stirpes distributions.

(c) Eric also argues that the trustees' 2005 withholding of $157,000 — less than one-tenth of the total disbursements to Eric

and his children over a period of only four years — amounted to an abuse of discretion. But the apparent demise of his 2004 suit, taken with what we hold to be the unsuccessful result of its successor, provide evidence of these claims' lack of merit sufficient to justify the trustees' decision to pass these defense costs on to Eric alone. The trustees reduced Eric's 2005 per stirpes share, in other words, on a "principled basis" (Restatement (Third) of Trusts § 50, Comment f) — these principles being Howard's intention to treat his children equally and the preservation of trust assets for the use of *all* its beneficiaries. See *Griffith*, 249 Ga. at 146 (1) (affirming trustee's discretionary but unequal distribution to beneficiaries).

For all these reasons, the trial court did not err when it granted the trustees summary judgment on Eric's claims for breach of trust and breach of fiduciary duty.

2. Nor did the trial court err when it granted Howard summary judgment on Eric's claim against his father concerning his removal as a co-trustee. Eric has not disputed the trustees' evidence that before his removal as trustee, Eric refused to sign legal documents after verbally promising to do so, placed his girlfriend on the company payroll, and threatened to sue his siblings. This evidence gave Howard what the trust instrument described as "reasonable cause" to remove Eric. See OCGA § 53-12-221 (a) (1), (2) (trustee may be removed "[i]n accordance with the provisions of the trust instrument" or on a showing of "good cause"); *Davis v. Walker*, 288 Ga. App. 820, 821 (1) (655 SE2d 634) (2007) (reviewing and affirming trial court's removal of trustee for reasonable cause under an abuse of discretion standard).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JANUARY 7, 2011 — 

*Perrell & Wright, Charlotte K. Perrell*, for appellant.
*Doffermyre, Shields, Canfield, Knowles & Devine, Everette Doffermyre, Sheryl L. McCalla, Ford & Harrison, John L. Monroe, Jr., Kilpatrick Stockton, Alexander S. Clay, Susan A. Cahoon, William R. Poplin, Jr.*, for appellees.